Frank S. Hedin
HEDIN HALL LLP
1395 Brickell Avenue, Ste 1140
Miami, Florida 33131
Telephone: + 1 (305) 357-2107
Facsimile: + 1 (305) 800-2201
Email: fhedin@hedinhall.com

*Counsel for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SHELI BITTNER, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>FRANCHISE WORLD HEADQUARTERS, LLC; DOCTOR'S ASSOCIATES LLC; and SUBWAY FRANCHISEE ADVERTISING FUND TRUST, LTD,<br><br>    Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Sheli Bittner, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support exists for the allegations set forth in this complaint, and that a reasonable opportunity for discovery will reveal such evidence.

CLASS ACTION COMPLAINT                                    Civil Case No.: _____

## NATURE OF ACTION

1. Plaintiff brings this Class Action Complaint for legal and equitable remedies resulting from the illegal actions of Franchise World Headquarters, LLC, Doctor's Associates LLC, and Subway Franchisee Advertising Fund Trust, Ltd (collectively, "Defendants") in sending automated text message advertisements to her cellular telephone and the cellular telephones of numerous other individuals across the country, in clear violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

## JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

3. Personal jurisdiction and venue are proper because all of the SMS text messages at issue in this case, sent to Plaintiff and all members of the proposed Class, were transmitted by Defendants or by non-party Mobivity Holdings Corp. on Defendants' behalf from within this District, because the automated dialing systems used to transmit such messages were (and still are) maintained and operated by Mobivity Holdings Corp., on Defendants' behalf and under Defendants' control and direction, from Mobivity's Chandler, Arizona headquarters.

## PARTIES

4. Plaintiff is an individual and a "person" as defined by 47 U.S.C. § 153(39). Plaintiff is a resident and citizen of Zephyrhills, Florida.

5. Defendants Doctor's Associates LLC, Subway Franchisee Advertising Fund Trust, Ltd, and Franchise World Headquarters, LLC collectively own, operate,

oversee, and control the "Subway" brand of restaurants for the United States. Defendant Doctor's Associates LLC maintains its corporate headquarters in Doral, Florida, and Defendants Subway Franchisee Advertising Fund Trust, Ltd and Franchise World Headquarters, LLC maintain their corporate headquarters in Milford, Connecticut.  Each of the Defendants is a "person" as defined by 47 U.S.C. § 153(39).

6. Defendant Doctor's Associates LLC is the franchisor of the Subway brand for the United States. Defendant Doctor's Associates LLC controls and directs the marketing, advertising, and other business functions of Defendants Franchise World Headquarters, LLC and Defendant Subway Franchisee Advertising Fund Trust, Ltd.

7. Defendant Subway Franchisee Advertising Fund Trust, Ltd is a provider of restaurant services, including advertising services, for the Subway brand in the United States. Defendant Subway Advertising Fund Trust Ltd operates under the control and direction of Defendant Doctor's Associates LLC.

8. Defendant Franchise World Headquarters, LLC operates and franchises Subway restaurants in the United States. Defendant Franchise World Headquarters, LLC operates under the control and direction of Defendant Doctor's Associates LLC and Defendant Subway Franchisee Advertising Fund Trust, Ltd.

9. Non-party Mobivity Holdings Corp. ("Mobivity") is a Delaware corporation that maintains its corporate headquarters and principal place of business in Chandler, Arizona. Mobivity "is in the business of developing and operating proprietary platforms over which brands and enterprises can conduct national and localized, data-driven marketing campaigns. [Mobivity's] proprietary platforms, consisting of software available to phones, tablets, PCs, and Point-of-Sale ('POS')

CLASS ACTION COMPLAINT            3            Civil Case No.: _____

systems, allow resellers, brands and enterprises to market their products and services to consumers through text messages sent directly to the consumers via mobile phones, mobile smartphone applications, and dynamically printed receipt content. [Mobivity] generate[s] revenue by charging the resellers, brands and enterprises a per-message transactional fee, through fixed or variable software licensing fees, or via advertising fees. [Mobivity] help[s] personal care, restaurant and retail brands realize their strategy of growing their business by increasing customer frequency, engagement and spend. Mobivity's analytics services and products provide solutions that allow brands to take validated marketing actions across all channels, based on real customer behavior to create personalized, relevant, localized and targeted campaigns. With national clients such as Subway, Sonic, Chick-fil-A, and Baskin-Robbins, Mobivity's goal is to unlock the power of internal and external customer data to create a system that provides data driven insight to continually adapt and enhance communications with customers."[1] Mobivity operates and maintains the proprietary platforms described above, including its automated dialing equipment and related systems used transmit SMS text messages on behalf of its clients, including the text messages at issue in this case transmitted by Mobivity on Defendants' behalf via the SMS short-code number 782929[2], from its corporate headquarters and principal place of business in Chandler, Arizona.

---

[1]   Form 10-K for Mobivity Holdings Corp. for the fiscal year ending December 31, 2018, filed with Securities and Exchange Commission on April 15, 2019, at 1, *available at* https://ir.mobivity.com/annual-reports/content/0001445866-19-000425/mfon_10k.htm (last accessed January 30, 2020).

[2]   Mobivity Terms and Conditions, Mobivity Holdings Corp., available at https://www.mobivity.com/content-and-resources/terms/ (last accessed January 30, 2020) (identifying, inter alia, "782929" as an SMS short-code number operated and maintained by Mobivity on its clients' behalf).

10. Thus, acting in concert with one another, Defendants collectively oversee, maintain, and operate the consumer text-message marketing program for the "Subway" brand, including the content programming, initiation and making, and transmission of SMS text messages to consumers from the SMS short code 782929, via dialing technology located, maintained, and operated by Defendants or by Mobivity on their behalf at Mobivity's headquarters in Chandler, Arizona.[3]

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

11. In 1991, faced with a national outcry over the volume of robocalls being received by American consumers, Congress enacted the TCPA to address certain abuse telecommunications practices.

12. The TCPA prohibits, *inter alia*, making any telephone call to a cellular telephone using a "prerecorded or artificial voice" or an "automatic telephone dialing system" ("ATDS" or "autodialer") absent an emergency purpose or the "express consent" of the party called. The TCPA further provides that any text message constituting an "advertisement" or "telemarketing" message within the meaning of the TCPA requires the sender to acquire the recipient's "prior express written consent" before initiating such a message via an autodialer.

---

[3] "Web Site Terms of Use," Subway.com, "last revised" January 1, 2020, available at https://www.subway.com/en-US/Legal/TermsOfUse (last accessed January 30, 2020) ("IMPORTANT: THESE TEXT MESSAGING TERMS OF USE APPLY ONLY IF YOU HAVE OPTED TO RECEIVE TEXT MESSAGES FROM FRANCHISE WORLD HEADQUARTERS, LLC on behalf of Doctor's Associates LLC, ('DAL'), the franchisor of the Subway® brand for the USA, and Subway Franchisee Advertising Fund Trust, Ltd. the advertiser for the Subway® brand in the USA, ('we' or 'us').);

13. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, autodialed calls and text messages are prohibited because receiving them is a greater nuisance and more invasive than receiving live or manually dialed telephone solicitations. The FCC also recognized that wireless customers are charged for such incoming calls and texts whether they pay in advance or after the minutes are used. Moreover, because cellular telephones are carried on their owners' persons, unsolicited calls and texts transmitted to such devices via an autodialer are distracting and aggravating to their recipients and intrude upon their recipients' seclusion.

14. To state a cause of action for violation of the TCPA, a plaintiff need only set forth allegations demonstrating that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

15. Plaintiff was at all times mentioned herein the subscriber of the cellular telephone number (813) ***-0316 (the "0316 Number"). The 0316 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

16. During the preceding four years, Defendants transmitted, by themselves or through an intermediary or intermediaries, multiple text messages to Plaintiff's 0316 Number and at least one text message (that was identical to or substantially the same as those received by Plaintiff) to each member of the putative Class. All of the subject

text messages sent to Plaintiff and the members of the putative Class constituted "advertisements" or "telemarketing" messages within the meaning of the TCPA and its implementing regulations because each such message was aimed at promoting the commercial availability of Defendants' products and services and ultimately selling such products and services. Defendants offered such products and services for sale to Plaintiff and the members of the putative class for the purpose of deriving commercial profit from the purchase of any such products or services ultimately made by Plaintiff.

17. All of the subject text messages received by Plaintiff and the members of the putative Class were transmitted by or on behalf of Defendants without the requisite prior "express written consent" of Plaintiff or any member of the putative Class.

18. For example, on or about January 15, 2020, Defendants transmitted or caused to be transmitted, by themselves or through an intermediary or intermediaries, and without Plaintiff's prior "express written consent," a text message to the 0316 Number that stated as follows:

> Get 3 Footlongs for $18, after 4pm @SUBWAY. Extras more.* Excludes Ultimate subs. Exp 1/21: https://sbwy.us/cks55t77zpf HELP/STOP call 8447887525

The link in the above-depicted text message redirected to a website operated and maintained by or on behalf of Defendants, where Defendants sell their products and services to consumers for commercial profit.

19. Each unsolicited text message sent by or on behalf of Defendants to Plaintiff's 0316 Number originated from the telephone number 782929, which is a dedicated SMS short code leased or owned by Mobivity on behalf of Defendants that Defendants use to transmit text messages to consumers *en masse*, in an automated

fashion and without human intervention, using dialing texhnology operated and maintained by Mobivity on Defendants' behalf at Mobivity's headquarters in Chandler, Arizona.

20. Because Plaintiff's cellular phone alerts her whenever she receives a text message, each unsolicited text message transmitted by or on behalf of Defendants to Plaintiff's 0316 Number invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion upon receipt.

21. All telephone contact by Defendants or affiliates, subsidiaries, or agents of Defendants to Plaintiff's 0316 Number and to the numbers belonging to the unnamed Class members occurred using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A). Specifically, Defendants utilized an "automatic telephone dialing system" because all such text messages were sent from a dedicated SMS short code used for the exclusive purpose of transmitting text messages to consumers *en masse*; because the subject text messages contained the same or substantially the same generic, pro forma content; because the dialing equipment utilized by or on behalf of Defendants to send such messages includes features substantially similar to a predictive dialer, inasmuch as it is capable of making or initiating numerous calls or texts simultaneously (all without human intervention); and because the hardware and software used by or on behalf of Defendants to make or initiate such messages have the capacity to store, produce, and dial random or sequential numbers, and to receive and store lists of telephone numbers, and to then dial such numbers, *en masse*, in an automated fashion without human intervention.

22. And indeed, Defendants actually transmitted the text messages at issue in this case to Plaintiff and all other putative Class members in an automated fashion and without human intervention, with hardware and software that received and stored telephone numbers and then automatically dialed such numbers. In fact, on both Mobivity's and Defendants' websites, the companies describe Defendants' text messages sent from the SMS short-code number 782929 as "<u>autodialed</u> ads and other marketing messages" that are "from Subway."[4]

23. Neither Plaintiff, nor any other member of the putative Class, provided their prior "express written consent" to Defendants or any affiliate, subsidiary, or agent of Defendants to transmit the subject text message advertisements to the 0316 Number or to any other Class member's cellular telephone number by means of an "automatic telephone dialing system" within the meaning of 47 U.S.C. § 227(b)(1)(A).

24. None of Defendants' text messages to the 0316 Number or to any putative Class member's cellular telephone number was sent for an emergency purpose.

## CLASS ALLEGATIONS

25. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The "Class" which Plaintiff seeks to represent is comprised of and defined as follows:

---

[4] "Web Site Terms of Use," Subway.com, "last revised" January 1, 2020, available at https://www.subway.com/en-US/Legal/TermsOfUse (last accessed January 30, 2020) (referencing "up to 10 <u>autodialed</u> ads and other marketing messages per month from us" under heading titled "Text Messaging ('SMS') Terms of Use") (emphasis added); "Terms – (782929) Subway Terms and Conditions," Mobivity Holdings Corp., available at https:// http://support.mobivity.com/782929terms/ (last accessed January 30, 2020) (referencing "up to 10 <u>autodialed</u> ads and other marketing messages per month from Subway") (emphasis added).

> All persons in the United States who, at any time between the four years preceding the filing of this action and the present:
>
> (1) subscribed to a cellular telephone service;
>
> (2) received, at the telephone number assigned to such service, at least one text message promoting the sale of goods or services sent by or on behalf of Defendants from the SMS short-code number 782929; and
>
> (3) for whom Defendants lack any record establishing the person's provision of "express written consent" to receive such message(s) prior to the initiation of the first such message.

26. Excluded from the class are Defendants, their officers and directors, members of the immediate families of the foregoing, legal representatives, heirs, successors, or assigns of the foregoing, and any entity in which Defendants have a controlling interest.

27. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

28. Plaintiff and all Class members have been impacted and harmed by the acts of Defendants or their affiliates, agents, or subsidiaries acting on their behalf.

29. This Class Action Complaint seeks injunctive relief and monetary damages.

30. Defendants or any affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

31. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance, and superiority requirements.

32. On application by Plaintiff's counsel for class certification, Plaintiff may also seek certification of subclasses in the interests of manageability, justice, or judicial economy.

33. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

34. <u>Typicality</u>. Plaintiff received at least one text message from Defendants that originated from the telephone number 782929, at a cellular telephone number to which she subscribes, and Defendants lack any record establishing Plaintiff's prior "express written consent" to receive any such messages within the meaning of the TCPA. Consequently, the claims of Plaintiff are typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' TCPA-violative misconduct as alleged herein.

35. <u>Adequacy</u>.  As the proposed Class representative, Plaintiff has no interests adverse to or which conflict with the interests of the absent members of the Class, and she is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue these claims.  If necessary as the litigation (including discovery) progresses, Plaintiff may seek leave to amend this Class Action Complaint to modify the Class definition set forth above, add additional Class representatives, or assert additional claims.

36. <u>Competency of Class Counsel</u>.  Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. Plaintiff's counsel are experienced in handling complex class action claims, including in particular claims brought under the TCPA (as well as other consumer protection and data-privacy statutes).

37. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary from Class member to Class member and may be determined without reference to the individual circumstances of any Class member, include (but are not limited to) the following:

    a) Whether Defendants or affiliates, subsidiaries, or agents of Defendants sent text message advertisements to Plaintiff's and Class members' cellular telephones;

b) Whether such text messages were sent using an "automatic telephone dialing system";

c) Whether Defendants can meet their burden to show that they (or any disclosed affiliate, subsidiary, or agent of Defendants acting on their behalf) obtained prior "express written consent" within the meaning of the TCPA to transmit the subject text messages to the recipients of such messages, assuming such an affirmative defense is timely raised;

d) Whether Defendants or any affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

38. <u>Superiority.</u>  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the prosecution of individual litigation on behalf of each Class member is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not; multiple trials of the same factual issues would magnify the delay and expense to all parties and the court system.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class wide relief is essential to compel compliance with the TCPA and thus protect consumers' privacy.  The interests of Class members in individually controlling the prosecution of separate

claims is small because the statutory damages recoverable in an individual action for violation of the TCPA are likewise relatively small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the text messages at issue are all automated and because Defendants lack any record reflecting that they obtained the requisite consent from any Class member to be sent such messages. Class members can be readily located and notified of this class action by reference to Defendants' records and, if necessary, the records of Defendants' affiliates, agents, or subsidiaries and cellular telephone providers.

39. Additionally, the prosecution of separate actions by individual Class members would create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to such adjudications, thereby substantially impairing or impeding the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could also establish inconsistent results and/or establish incompatible standards of conduct for Defendants.

**CLAIM FOR RELIEF**
**VIOLATION OF THE TELEPHONE**
**CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

40. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

41. Plaintiff and each member of the Class received at least one text message sent by or on behalf of Defendants during the class period. All such messages sent to Plaintiff and the members of the proposed Class promoted the sale of Defendants' goods or services or the commercial availability of goods or services sold by

Defendants; consequently, all such messages constituted "advertising" or "telemarketing" material within the meaning of the TCPA and its implementing regulations. Additionally, all such messages were sent via the same dialing technology, which qualified as an ATDS within the meaning of the TCPA, as evidenced by the generic nature of the text messages, the use of a dedicated telephone number to transmit each such message, and the capacities, capabilities, and features of the dialing technology at issue, as alleged above.

42. Neither Plaintiff nor any other member of the Class provided Defendants his or her prior "express written consent" within the meaning of the TCPA to receive the autodialed text message advertisements at issue in this case.

43. Defendants' use of an ATDS to transmit the subject text message advertisements to telephone numbers assigned to a cellular telephone service, including to Plaintiff's 0316 Number and the numbers of all members of the proposed Class, absent the requisite prior "express written consent," as set forth above, constituted violations of the TCPA by Defendants, including but not limited to violations of 47 U.S.C. § 227(b)(1)(A)(iii).

44. Plaintiff and all Class members are entitled to, and do seek, an award of $500.00 in statutory damages for each such violation of the TCPA committed by or on behalf of Defendants (or $1,500.00 for any such violations committed willfully or knowingly) pursuant to 47 U.S.C. § 227(b)(3).

45. Plaintiff, individually and on behalf of the putative Class, seeks an award of attorneys' fees and costs to Plaintiff's counsel pursuant to Federal Rule of Civil Procedure 23.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sheli Bittner prays for relief and judgment in favor of herself and the Class and against Defendants Franchise World Headquarters, LLC, Doctor's Associates LLC, and Subway Franchisee Advertising Fund Trust, Ltd as follows:

    A.    Injunctive relief sufficient to ensure Defendants refrain from violating the TCPA in the future;

    B.    Statutory damages of $500.00 for herself and each Class member for each of Defendants' violations of 47 U.S.C. § 227(b)(1) (or $1,500.00 for each such violation to the extent committed willfully or knowingly);

    C.    An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclass(es) the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the attorneys representing Plaintiff as counsel for the Class; and

    D.    An award of attorneys' fees and costs to Plaintiff's counsel, payable from any class-wide damages recovered by the Class, pursuant to Federal Rule of Civil Procedure 23.

## DEMAND FOR JURY TRIAL

On behalf of herself and all others similarly situated, Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims and issues so triable.

Dated: January 30, 2020　　**HEDIN HALL LLP**

　　　　　　　　　　　　　　By:　/s/ Frank S. Hedin
　　　　　　　　　　　　　　　　　　Frank S. Hedin

　　　　　　　　　　　　　　Frank S. Hedin*
　　　　　　　　　　　　　　HEDIN HALL LLP
　　　　　　　　　　　　　　1395 Brickell Avenue, Ste 1140
　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　Telephone:　+ 1 (305) 357-2107
　　　　　　　　　　　　　　Facsimile:　+ 1 (305) 800-2201
　　　　　　　　　　　　　　Email: fhedin@hedinhall.com

　　　　　　　　　　　　　　* *Pro Hac Vice* Application Forthcoming

　　　　　　　　　　　　　　*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT　　　　17　　　Civil Case No.: _____